IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JEREMEY P. WEBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 14 cv 1009-LRR |
| ) | |
| PREMIUM ASSET SERVICES, LLC ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Jeremey P. Weber ("Weber") and states and alleges as follows:

1. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and the Iowa Consumer Credit Code, Ch. 537, in their illegal efforts to collect a consumer debt from Weber.

2. Weber seeks statutory and actual damages, as well as attorney fees and costs.

### JURISDICTION

3. Original and supplemental jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1367.

### VENUE

4. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) in that Defendant does business in this district, and a substantial portion of the events that give rise to this claim occurred in this district.

### PARTIES

5. Plaintiff Jeremey P. Weber (hereafter "Plaintiff"), is an adult individual residing at 440 West 3rd St., Apt. 1, Dubuque, IA 52001, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

6. The Defendant, Premium Asset Services, LLC (hereafter "Premium"), is a company with an address of Premium Asset Services, LLC, 3540 W Sahara Avenue

#810, Las Vegas, Nevada 89102, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

## FACTS

7. Plaintiff allegedly incurred a financial obligation (the "Debt") to U.S. Bank (the "Creditor").

8. The Debt allegedly arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

9. The Debt was purchased, assigned or transferred to Premium for collection, or Premium was employed by the Creditor to collect the Debt.

10. Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

A. Premium's Illegal Collection Practices

11. On or about January 20, 2014, Premium left a message on Weber's parents voicemail asking for Defendant. The phone number Premium used was 855-895-9005.

12. Weber called back and spoke with a representative of Premium who identified himself as "Dan." Dan told Weber that he had to pay a debt of $3,808.77 that was originally owed to U.S. Bank. He said the debt was for a check deposited in Weber's account that bounced.

13. Dan told Weber that the original check amount had been $1,000, and that the rest he owed was from interest. Dan also told Weber that Premium had sent him a communication 10 days ago. Weber never received any such communication.

14. Weber was confused by this call and requested that Premium send him a verification. On January 20, he received an email from Premium's representative Stephanie LaFortune. The email attached a letter signed by Michael Dean on behalf of Premium.

15. The attached document was entitled "Settlement Letter" and stated that Weber owed $3,808.77. The letter offered a settlement of $2,500 and demanded a payment of $100 by January 24, 2014,$200 by February 28, 2014, and the balance on March 28, 2014.

16. The letter stated that once payment was received, "Premium Asset Services

2

will release you from all claims and liabilities pertaining to this account including any relation with ChexSystems." Weber's Chex Systems report does not have any negative information on it from U.S. Bank or Premium.

17. On March 5, 2014, Weber was contacted by a representative from Premium. The caller ID on his phone recorded the number only as "657." Weber could not understand what name the representative gave.

18. Weber informed Premium that he was represented by the undersigned and provided the necessary contact information. Weber stated that his attorney had already written to Premium. The representative stated that Premium hadn't received a letter and asked Weber what he was going to do about the debt. The representative told Weber that if he didn't pay, there would be "severe consequences."

19. Weber again expressed confusion about the debt. The representative told Weber he had already received a letter from Premium about the debt. Weber stated that this was incorrect, and he had only received an email.

20. The representative asked Weber what his attorney had told him to do about the debt. The representative stated again that there would be "severe consequences" if Weber didn't pay because it was his debt. The representative asked Weber whether he wanted to settle things in a "civil manner."

21. The representative told Weber he be sued about this debt and lose everything. He further stated that Premium was allowed to sue him because Iowa had an 8-year statute of limitations to collect his debt.

B. Plaintiff Suffered Actual Damages

22. Weber has suffered and continues to suffer actual damages as a result of the Defendant's unlawful conduct.

23. As a direct consequence of the Defendant's acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, fear, frustration and embarrassment.

24. The Defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

# COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692, et seq.

25. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

26. Defendant failed to provide a validation notice with the required disclosures within 5 days initial communication with Weber, in violation of 15 U.S.C. § 1692g(a) and 1692e(11).

27. Defendant falsely and misleadingly represented the character, amount, and legal status of the debt in insisting that Weber owed this debt, that the debt was not time-barred, and that $3,808.77 was the correct amount due, in violation of 15 U.S.C. § 1692e(2)(A), and Iowa Code 537.7103(4.).

28. Defendant attempted repeatedly to collect $2,808.77 in "interest," although not authorized to do so by any agreement or law, in violation of 15 U.S.C. § 1692f(1).

29. Defendant used false representations and deceptive means to attempt to collect its debt, in violation of 15 U.S.C. § 1692e(10) when it informed Weber that if he paid them, it would release him from claims and liabilities, including with ChexSystems. There is nothing to release, as Weber's ChexSystems report has no adverse information related to Premium or U.S. Bank.

30. Defendant used false representations and deceptive means to attempt to collect its debt, in violation of 15 U.S.C. § 1692e(10) when it informed Weber that it could sue him because Iowa had an 8-year statute of limitations for this debt.

31. Defendant knew that Weber was represented by an attorney, but continued to communicate with him, in violation of 15 U.S.C. § 1692c(a)(2).

32. Defendant acted unfairly and unconscionably when it asked Weber to disclose privileged conversations between himself and his attorney, in violation of 1692(f).

## COUNT II – VIOLATION OF IOWA CONSUMER CREDIT CODE

33. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34. Defendant attempted to collect $2,808.77 in "interest," although not expreslly authorized to do so by any agreement or law, in violation of Iowa Code 537.7103(d.).

35. Defendant communicated with Weber although it knew he was represented by an attorney, in violation of Iowa Code 537.7103(f.).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the case proceed to trial by jury and that judgment be entered against the Defendant as follows:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant;

B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against the Defendant;

C. Costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant;

D. Actual damages from the Defendant for all damages, including emotional distress suffered as a result of the intentional, reckless, and/or negligent FDCPA violations and intentional, reckless, and/or negligent invasions of privacy in an amount to be determined at trial;

E. Punitive damages; and

F. Such other and further relief as may be just and proper.

JEREMEY P. WEBER, Plaintiff

By: /s/ Gina L. Kramer
AT 0010567
REYNOLDS & KENLINE, L.L.P.
110 EAST 9TH STREET
P. O. BOX 239
DUBUQUE, IA 52004-0239
TEL: 563-556-8000; FAX: 563-556-8009
kramer@rkenline.com